Dear Mayor Congemi:
We are issuing this "A" opinion to the 1998 opinion to you regarding the City of Kenner creating a merit based civil service system. We have recently been made aware of a conflict between the summary heading of our opinion, number 98-363, and the body of said opinion, as well as a conflict with the wording of this opinion, both summary heading and body, as it appears on Westlaw. Thus, we find it necessary to issue this "A" opinion to resolve the matter.
First, the Westlaw opinion is not the official released opinion and will be withdrawn from Westlaw and the released opinion of No. 98-363 will be resubmitted for publication on Westlaw. Second, the incorrect summary heading, although not part of the opinion of this office will also be corrected. Third, we write to clarify the procedure for adopting a city civil service system under the constitution and correct references in the opinion to Art. VI, 14, which should have been Art. VI, 4.
This "A" opinion will only address the first question in Opinion No. 98-363, which was as follows:
 May the City of Kenner call a referendum to amend its home rule charter and create a merit based civil service system? If not, can the Legislature pass an act authorizing such an amendment? Failing both of these options, could the Legislature pass an act creating a civil service plan for the City of Kenner?
For clarification and understanding of this opinion, we adopt herein the language of the released version of Opinion No. 98-363 [not the Westlaw version] and restate same as follows:
 As you are well aware, the City of Kenner operates under a home rule charter. Article VI, 4 [sic] of the Louisiana Constitution (1974) mandates:
 Every home rule charter or plan of government existing or adopted when this constitution is adopted shall remain in effect and may be amended, modified, or repealed as provided therein. Except as inconsistent with this constitution, each local governmental subdivision which adopted such a home rule charter or plan of government shall retain the powers, functions, and duties in effect when this constitution was adopted. If the charter permits, each of them also shall have the right to powers and functions granted to other local governmental subdivisions.
 The City of Kenner's home rule charter went into effect on July 1, 1974, well in advance of the effective date of the Louisiana Constitution, December 31, 1974. Therefore, Kenner falls under the scope of this provision.
 Article X, Part I, of the Louisiana constitution provides for State and City Civil Service Systems. Section 14 of that Part allows for local option elections concerning the city civil service system provided therein. However, Article X, 15 provides, in applicable part, as follows:
 Nothing in this Part shall prevent the establishment by the legislature or by the respective municipal governing authority of a municipal civil service system in one or more municipalities having a population of less than four hundred thousand, in any manner now or hereafter provided by law.
 Your first issue is one of first impression for this office and raises some difficult concerns. The meaning and impact of the phrase, "as provided by law", has been the subject of some debate in this matter. A review of pertinent constitutional debates clearly establishes that legislative action was the sole intent of this provision. In other words, if no statutory directive presently exists in which a municipality may adopt its own civil service system, legislative action is required delineating the manner in which such a civil service system is established.
 It has been argued that this authority is limited with regard to home rule charters by Article VI, 6 which states, "[t]he legislature shall enact no law the effect of which changes or affects the structure and organization or the particular distribution and redistribution of powers and functions of any local governmental subdivision which operates under a home rule charter." While this provision generally applies to the Legislature's actions affecting home rule charters, Article X, 15 is a more specific provision concerning municipal civil service. If any conflict exists between these two provisions, the more specific provision to the issue controls. Consequently, legislative action would be required in order for the City of Kenner to exercise any authority pursuant to Article X, 15. However, no legislation has been enacted to this effect.
 As a result, the only presently viable option is a civil service plan adopted pursuant to Article X, 14 of the Louisiana Constitution. Therefore, the City of Kenner presently has limited constitutional authority to amend its charter by referendum pursuant to Article VI, 4(A) [sic], unless the Legislature enables the municipality pursuant to Article X, 15.
After studying the constitutional convention debates, we recall onlythat portion of Attorney General Opinion No. 98-363 which finds that Article X, 15 requires legislative action before the City of Kenner may amend its charter to provide for a local civil service plan. Our explanation follows.
The verbatim transcripts of the Constitutional Convention of 1973, Volume 32, 98th Day's Proceedings, pp. 2-30, were studied to see if the delegates discussed whether the language of Article X, 15 intended to require legislative action before a local governing authority could create a civil service system. Here is what we found.
With regard to the present language of Article X, 15, Delegate Jackson proposed an amendment to delete reference to the respective local governing body being able to establish a civil service system, stating that he wanted to clarify that state employees or parish employees that are now exempted from civil service will not be placed under civil service if the parish authority — local authority — decides that they want to make some change in their status. He wanted to clarify the fact that employees that are now exempted and that are not now subject to civil service would not be subjected to it in the future by a decision of the local governing authority.
Delegate Lanier asked if the effect would mean that a local authority like a home rule charter could not do this.
Delegate Jackson stated that the effect would be to keep those employees that are now exempt, exempt. He was concerned about assessors and school teachers, employees in that category that are employees of local governing agencies, not being subjected to civil service.
Discussion followed about the definition of local governing authority and whether a school board was a local government body or a political subdivision.
The amendment was adopted.
Delegate Poynter proposed the amendments that now make up Paragraphs 2 and 3 of Art. X, 15. Amendment #2: "However, nothing in this paragraph shall permit inclusion in the local civil service of officials and employees listed in Paragraph (B) of this section", and amendment #3: "No law enacted by the legislature establishing a civil service system applicable to one or more parishes or to one or more municipalities having a population of less than four hundred thousand shall be effective in any parish or in any such municipality until approved by ordinance adopted by the governing authority of the affected parish municipality."
Discussion was had about the only way to have civil service for employees such as those of the sheriffs, clerks of court and assessors would be by a constitutional amendment.
Delegate Dennery discussed the proposed amendments stating: "Now, the present amendment would remove from the legislature the power to add to the classified service. The amendment which you just adopted [Delegate Jackson's amendment] would remove that from the power of the local governing body. This amendment would remove it from the power of the legislature as well. This would change the present law, which permits the legislature to put sheriffs, clerks, etc. in the classified service, and would prohibit the legislature from doing that."
On page 18 of the 98th Days' proceedings, Delegate Lanier proposed an amendment to clarify that a parish governing authority could create it's own civil service system under Article X, 15:
 Mr. Chairman and fellow delegates, this amendment applies to Paragraph (O), which is on pages 8 and 9. It's designed to make it absolutely clear what authority in the parish or the municipality has the authority to create a civil service board. Now, we had the amendment by Delegate Alphonse Jackson this morning where he was concerned about the language `local governing body' being construed to mean a school board, therefore giving a school board the authority to set up a civil service system. By taking out all of this language — and the language he took out was `or by the respective local governing body' — we are left with the situation in Paragraph (O) where it could easily be construed to mean that the parish governing authority does not have authority to establish a civil service system. But, if you'll read the clause that starts with the word `or,' on the last line, you will see where a city still has the authority to establish a civil service system, so we have a rather anomalous situation where the parish can't do it and the city can do it. My amendment is designed to do what I think Mr. Dennery was trying to do and solve the problem that Mr. Jackson had with the vagueness of the term `local governing body.' Now, in local and parochial government, we used the term in our definitions — and it's definition number one under Section 51 — `local governmental subdivision' means `any parish or municipality.' With reference to the general term affecting all units — and, in particular, school board — we used the term `political subdivision.' So, the language that I have here, referring to the respective parish governing authority — that clearly shows that this is not the school board or any special district; this is the governing authority of the parish. With reference to the city, we have `city governing authority,' and this is intended to mean the city governing authority, and not any other special district or district of that type. I think that this solves the problem, and I would respectfully urge your adoption of this amendment. I'd be happy to answer any questions. I believe Mr. Jackson has one, Mr. Chairman.
Delegate Jackson discussed the possibility of this amendment allowing the police jury to place exempted parish employees under civil service. This purpose of the amendment was agreed on. Delegate Jackson was also concerned that schoolteachers could be placed under civil service by the police jury. Delegate Lanier disagreed, arguing that schoolteachers are not under the police jury, but are under an independent school board. They agreed that they were not quarreling over the authority of the police jury to set up civil service for police jury people, and agreed to clarify the language "of all parish employees" to show that the legislature could create civil service for the school people and the parish could create civil service for the parish people, but that the parish could not create civil service for the school people. The Lanier amendment was then adopted.
After studying the constitutional convention debates, we are convinced that the delegates to the convention intended to not only retain the legislature's authority to establish a parish or municipal civil service system, but also to provide in Article X, 15 for a local governing authority, such as a police jury or a municipal body, to be able to establish a civil service system by laws enacted by the local governing body, pursuant to its authority to provide for its government under the constitution. This conclusion is consistent with the general proposition that "local governmental autonomy or home rule exists only to the extent that the state constitution endows a local governmental entity with two interactive powers: the power to initiate local legislation and the power of immunity from control by the state legislature. City of NewOrleans v. Board of Comm'rss of Orleans Levee Dist., 93-0690, p. 4 (La. 7/15/94), 640 So.2d 237, 242", New Orleans Campaign for a Living Wage v.City of New Orleans, 2002-0991 (La 9/4/02), 2002 WL 31005227 (La.).
Thus, the City of Kenner may adopt a civil service plan pursuant to Article X, § 14 and amend its charter by referendum, thereby electing to be governed by Part I of Article X of the 1974 Louisiana Constitution. If a majority of the electors vote to adopt such a civil service plan, it applies permanently; however, if a majority of the electors vote against the adoption of such a plan, it can not be resubmitted to the voters for one year thereafter.
Alternatively, the City of Kenner may adopt a civil service plan pursuant to Article X, § 15 by way of an amendment to its charter pursuant to its authority under Article VI, § 4, as a pre-1974 home rule charter government, to amend its charter as provided in the charter.
Thus, in clarification of our Opinion, No. 98-363, we answer your first question directly as follows:
1.(a)"May the City of Kenner call a referendum to amend its home rule charter and create a merit based civil service system?" Our opinion is yes. Under the authority of Art. X, § 14, the City of Kenner falls within the population range of 10,000 to 400,000, and therefore, it is our opinion that the city may pass an ordinance for the purpose of asking the voters if they want to amend the home rule charter to provide for a city civil service system under Part I of Article 10 of the 1974 Louisiana Constitution. This method requires an election. Alternatively, under the authority of Article X, § 15 and Article VI, § 4, the City of Kenner may amend its home rule charter as provided in the charter and provide for a local civil service system, within the constraints of Article X, § 15.
(b) "If not, can the Legislature pass an act authorizing such an amendment?" This action is not necessary, considering our opinion above which concludes that the local governing authority has the power to amend it's charter under the present provisions of the constitution.
(c) "Failing both of these options, could the Legislature pass an act creating a civil service plan for the City of Kenner?" Yes, Article X, 15 gives the legislature the authority to establish a municipal civil service system in a municipality having a population under 400,000 in any manner provided by law. The law is not effective, however, until approved by ordinance adopted by the local governing authority.
Trusting this clarification is sufficient, we remain
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 __________________________ ANGIE ROGERS LAPLACE Assistant Attorney General
RPI/ARL;mjb
Cc: Dan Sullivan, Louisiana Civil Service League, New Orleans
Date Released: November 7, 2002